\*E-filed 10/27/06\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GLORIA FRANCO,<br><br>          Plaintiffs,<br>   v.<br><br>BOSTON SCIENTIFIC CORPORATION,<br><br>          Defendants._____/ | NO. 05-cv-1774 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Gloria Franco brought this action alleging she was wrongfully terminated from her employment with defendant Boston Scientific Corporation as a catheter assembler. The complaint was originally filed in state court, and asserts claims under California's Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code § 12900 *et seq.* and California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200 *et seq.*[1] Boston Scientific removed the action to this Court on the basis of diversity jurisdiction.

Boston Scientific now moves for summary judgment, contending that plaintiff cannot establish a *prima facia* case of discrimination, and that even if she can, there are no material facts in

---

[1] A co-plaintiff who asserted similar claims has previously been dismissed after she ceased participating in the prosecution of the litigation.

dispute to rebut Boston Scientific's showing that Franco's employment was terminated for legitimate business reasons. Based on the parties' briefing, the argument of counsel, and the record, the motion will be granted in part and denied in part.

## II. BACKGROUND

Franco was hired by Boston Scientific in 1994 when she was 47 years old. She worked on a production line, assembling catheters apparently used in treatment of cardiovascular conditions. Between 1995 and 2003, Franco received a series of verbal and written warnings under Boston Scientific's disciplinary policies regarding certain attendance and behavioral issues. In general, Franco was disciplined for excessive tardiness and absences, and for several instances involving conflict between Franco and her coworkers. One written warning related to an incident when Franco allegedly pried a door off a garment cabinet to obtain a smock. During the same time period, Franco received annual performance reviews that noted some of these issues, yet others recorded that her attendance record met expectations and even commended her for being "dedicated to producing a defective free product."

In July of 2003, Franco received a "Final Written Warning" based on her violation of company policy against storing personal items and make up in her gowning locker. On Friday, March 5, 2004, Franco agreed to work a "voluntary" overtime shift the following morning at 4:00 a.m. There is a dispute as to whether Franco also informed her supervisors at that time that she might not be able to work as planned. In deposition, Franco testified as follows:

Q: What did he say?

A: Could I come in the next day.

Q: What did you say?

A: I said I would try.

Q: Did you say anything else?

A: No.

Q: Did you tell him that there was any reason that you wouldn't be able to make it?

A: I told him it's possible that I can't make it.

1 * * *

2 Q: And you told both of them [certain coworkers] you may work the next day?

3 A: "I may work."

4 * * *

5 Q: Did you speak to any body else at the company about working that Saturday?

6 A: No.

7 In later testimony, however, Franco asserted that she told her supervisor, Sam Alam, that she 8 "wasn't feeling well" and would not be able to come in on that Saturday after all.  Even assuming 9 the inconsistencies in Franco's own testimony raise a question as to whether Franco's commitment 10 to work on the Saturday in question was equivocal, she has pointed to no evidence from which a 11 reasonable trier of fact could conclude that Boston Scientific lacked a reasonable basis to believe 12 that Franco had agreed to work the Saturday overtime shift.

13 Franco did not appear for work on the Saturday in question.  In deposition, Franco testified 14 that she had set her alarm clock for 3:00 a.m. and that it went off, but she did not hear it.  Her 15 husband tried to rouse her at some point, but she ended up sleeping until 1:00 p.m.  Franco tried to 16 telephone her supervisor, but by then, everyone at Boston Scientific had gone home.  Her call was 17 not answered and she did not leave a message.

18 Boston Scientific asserts that it began reviewing Franco's employment history  the following 19 Monday in light of her failure to appear for the Saturday shift.  Given the prior warnings about 20 attendance issues, and the fact that Franco was on "Final Written Warning" (albeit for a non-21 attendance issue), Boston Scientific concluded that it had grounds under its disciplinary policies to 22 terminate her, and it did so on the following Wednesday.

23 According to Franco, however, on the same Monday after she missed the Saturday shift, she 24 had complained to her supervisor, Sam Alam, that certain other assembly line workers were using 25 "old" or "contaminated" glue, which she viewed as a health and safety hazard.[2]  Franco testified that

26

27     [2] Franco's testimony on the point is not entirely clear, and there is dispute as to the terms "old" and "contaminated," as well as to whether she had sufficient personal knowledge to support whatever 28 complaint she made. Nevertheless, her testimony is sufficient to raise a factual issue that she made some

3

1 in response to her complaint, Alam responded that Franco was "the only one he has to worry about,"
2 that she "talk[ed] way too much" and that he "was going to make some changes around there."

### III.  SUMMARY JUDGMENT STANDARDS

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties.  To preclude the entry of summary judgment, the non-moving party must bring forth material facts,  i.e., "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker*

---

complaint regarding glue being used in a manner that she believed created a health risk to users of the catheters.

4

*Magazine, Inc.*, 111 S.Ct. 2419, 2434-35 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986); *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987).  It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service*, 809 F.2d at 631.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.  The application of these standards in the context of employment discrimination claims is described further below.

## IV.  DISCUSSION

### A. Age Discrimination

FEHA provides that "[i]t is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age."  Cal. Gov't Code § 12941.  Because the same analysis is used to evaluate both FEHA claims and claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., ("ADEA"), "California courts interpreting FEHA often look to federal cases interpreting the ADEA." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996).

In general, a plaintiff asserting a claim of discriminatory discharge from employment has the initial burden of establishing the existence of a *prima facie* case. *Wallis v. Simplot*, 26 F.3d 885, 889 (9th Cir. 1994).  This initial burden can be satisfied by presenting evidence that "gives rise to an inference of unlawful discrimination." *Id*.  Indeed, "very little proof is needed to establish a *prima facie* case." *Chaffin v. Textron, Inc.*, 861 F.Supp. 972, 975 (E.D. Cal. 1994).  A plaintiff can carry her initial burden by showing that she:  (1) was a member of a protected class; (2) performed her job in a satisfactory manner; (3) was discharged; and (4) was replaced by a substantially younger employee with equal or inferior qualifications. *Wallis*, 26 F.3d at 891; *Chaffin*, 861 F.Supp. at 976.

5

If the plaintiff establishes a *prima facie* case, the defendant must produce evidence demonstrating that the adverse employment action was taken "'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)); *see also Wallis*, 26 F.3d at 889; *Chaffin*, 861 F.Supp. at 975. If the defendant meets this burden, the plaintiff must demonstrate that the defendant's proffered explanation is mere pretext. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996). A plaintiff can establish pretext by offering evidence showing that: (1) the defendant's alleged reason for the discharge was false, *or* (2) a discriminatory reason more than likely motivated the employer. *Id.*; *Chaffin*, 861 F.Supp. at 975. Plaintiff "must produce 'specific, substantial evidence of pretext'" in order to meet her burden at summary judgment. *Wallis*, 26 F.3d at 885 (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). "Mere conclusory allegations" regarding the defendant's motivation are "wholly empty" and generally insufficient to survive summary judgment. *Steckl*, 703 F.2d at 393. Where the evidence is "totally lacking," summary judgment will be appropriate even though plaintiff demonstrated a prima facie case. *Schnidrig v. Colombia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996); *Wallis*, 26 F.3d at 890; *Chaffin*, 861 F.Supp. at 975.

Although "very little evidence" is necessary to establish a *prima facia* case, it is far from clear that Franco has met her burden to do so in this instance. Other than a few conclusory comments that she believed Alam "preferred" younger employees, Franco points to no evidence of any age-based discrimination or animus whatsoever. Additionally, Franco does not contend she was replaced by a younger employee.

Even assuming plaintiff can make out a *prima facia* case of age discrimination, however, she has made *no* showing, in the context of age discrimination, to rebut Boston Scientific's showing that it terminated her for non-discriminatory reasons. Tellingly, even in the section of her brief directed to age discrimination, Franco argues that Boston Scientific's proffered reasons for firing her were pretextual because, in her view, there is an inference that her firing was *retaliatory* and motivated by her complaints about the glue. Accordingly, Franco has failed to demonstrate the existence of a triable issue of fact with respect to her age discrimination claim.

B. <u>Gender Discrimination</u>

Franco's gender discrimination claim suffers from the same defects as her age discrimination claim. Other than vague and conclusory comments regarding her subjective belief that Alam preferred male employees, Franco can point to no evidence of gender based discrimination. Indeed, although it is not entirely clear where Franco believes the "discrimination" lay, as Boston Scientific points out, her arguments more neatly fit a disparate treatment claim the one she has pleaded and is attempting to pursue in this case. Again, Franco relies on her contention that she was *retaliated* against, rather than pointing to any factual dispute that would suggest her termination was motivated by discrimination rather than by the reasons offered by Boston Scientific. Thus, Franco has failed to demonstrate the existence of a triable issue of fact with respect to her gender discrimination claim.

C. <u>Failure to Accommodate Disability</u>

The complaint alleges that Franco had a sleeping disorder that Boston Scientific failed to accommodate prior to her termination, and that the termination itself constituted a failure to accommodate. In both her deposition and in her opposition to this motion, however, Franco has never articulated what accommodations she required, what she requested but was denied, or what accommodations Boston Scientific should have provided even without a direct request from her. Franco does contend that she informed various of her supervisors about a number of physical conditions over the years, but she never sets forth any specific failure on Boston Scientific's part that would be actionable as disability discrimination. At best, Franco's theory may be that her alleged sleeping disorder contributed to her failure to appear for the Saturday work shift preceding her termination, but the facts surrounding that event do not rise to a failure to accommodate a disability. Franco does not suggest that Boston Scientific did or would have *required* her to work that shift, irrespective of whether she had any disability. Rather, the undisputed facts show that Boston Scientific simply believed–rightly or wrongly- that Franco had *agreed* to appear for the voluntary overtime shift. Even if Boston Scientific's reliance on Franco's failure to appear was pretextual, it was not a failure to accommodate or otherwise discriminate based on disability. Franco has failed to demonstrate the existence of a triable issue of fact to the contrary.

D. <u>Retaliation</u>

7

As noted above, the real focus of Franco's argument that her termination was pretextual is that an inference reasonably arises from timing and other circumstances that she was terminated in retaliation for making health and safety complaints. Although the question is close, the Court concludes there are triable issues of fact in this regard. Franco's testimony as to Alam's reaction to her complaints, coupled with the timing, could support an inference drawn by a trier of fact that the termination was *motivated* by retaliatory intent.

In moving for summary judgement on this claim, Boston Scientific has focused on the particular Labor Code referenced in Franco's complaint, and has argued that the facts do not establish a violation of those particular statutes. At oral argument, defense counsel argued that Franco's attempts to support this claim failed because she had pleaded specific statutory violations rather than a general "*Tameny*" claim.[3] The complaint, however, entitles this claim as "Termination in Violation of Public Policy." While perhaps not a model of pleading, it is sufficient to encompass a "*Tameny*" claim regardless of whether it also asserts specific statutory violations unsupported by these facts.

Under such a claim, there is no requirement that the employee make complaints to anyone outside the company. *See Green v. Ralee Engineering Company*, 19 Cal.4th 66, 77 (1998). Nevertheless, plaintiffs seeking to show termination in violation of public policy must "show that the important public interests they seek to protect are 'tethered to fundamental policies that are delineated in constitutional or statutory provisions.'" *Green v. Ralee*, 19 Cal.4th at 71 (quoting *Gantt v. Sentry Insurance*, 1 Cal.4th 1083, 1095 (1992)).[4] Here, neither Franco's complaint nor her opposition to this motion specifically identifies statutes or regulations to which she can tether her claim. In the context of medical devices, however, it seems reasonably self-evident that Franco may be able to identify pertinent governing authority that would be implicated by her complaints about the catheter assembly. Franco must eventually identify such authority because, under California law, the courts are not free to determine what is or is not a "fundamental public policy," *Green v.*

---

[3] See *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172 (1980).

[4] The *Green* court went on to hold that administrative regulations could also serve as a source of public policy.

8

*Ralee*, 19 Cal.4th at 71.  Nevertheless, the Court declines to enter summary judgment on this claim simply because to date Franco has not cited specific statutes or regulations that may be pertinent.[5]

## V.  CONCLUSION

Boston Scientific's motion for summary judgment is granted with respect to Franco's claim for discrimination based on age, gender, or disability.  The motion is otherwise denied.  The parties shall appear for a status conference on November 8, 2006, at 2:30 p.m.

IT IS SO ORDERED.

Dated:  October 27, 2003

RICHARD SEEBORG
United States Magistrate Judge

---

[5] Boston Scientific's motion does not expressly address Franco's claim under Bus. & Prof. Code § 17200 *et seq.,* although that claim would fail automatically if all the other claims failed.